IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Jeffry C.,[1]                                    No.  6:19-cv-00552-HZ

                    Plaintiff,                   OPINION & ORDER

        v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                    Defendant.


Katherine L. Eitenmiller
Brent Wells
HARDER, WELLS, BARON & MANNING, P.C.
474 Willamette Street
Eugene, Oregon 97401

        Attorneys for Plaintiff

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

Renata Gowie
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Lars J. Nelson
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Jeffry C. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court reverses the Commissioner's decision and remands this case for further proceedings.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB and SSI on May 29, 2015 alleging an onset date of May 4, 2014. Tr. 114.[2] Plaintiff's date last insured ("DLI") is March 31, 2015. Tr. 279. His application was denied initially and on reconsideration. *Id.*

      On December 4, 2017, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 45. On March 29, 2018, the ALJ found Plaintiff not disabled. Tr. 37. The Appeals Council denied review. Tr. 1.

//

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 9-15.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on "Learning and add, spinal cord damage," "Legs and arms affected," "anxiety and depression," and "PTSD." Tr. 291. At the time of the his alleged onset date, he was 43 years old. Tr. 114. He has completed one year of college and past relevant work experience as a chain off bearer and line installer. Tr. 35, 292.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141;

20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if

not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any

impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work."

20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the

claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to

the Commissioner. In step five, the Commissioner must establish that the claimant can perform

other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the

Commissioner meets their burden and proves that the claimant can perform other work that

exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566,

416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity after his alleged onset date. Tr. 21. Next, at steps two and three, the ALJ determined that

Plaintiff has the following severe impairments: "degenerative disc disease of the cervical and

lumbar spine, obesity, anxiety, depression, attention deficit-hyperactivity disorder (ADHD) and

learning disorder, not otherwise specified." Tr. 21. However, the ALJ determined that Plaintiff's

impairments did not meet or medically equal the severity of a listed impairment. Tr. 21–22. At

step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform

sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following

limitations:

> The claimant is capable of lifting and/or carrying 10 pounds occasionally and less
> than 10 pounds frequently, standing and/or walking for a total of 4 hours in an 8-
> hour day and sitting for a total of 6 hours in an 8-hour day. He is able to push/pull
> as much as he can lift/carry. He is capable of occasional overhead reaching with

both the left and right upper extremities. He can climb ramps and stairs occasionally, but never climb ladders, ropes, or scaffolds. He can stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. He should never work around hazards such as unprotected heights and moving mechanical parts, and never operate a motor vehicle. The claimant is able to perform simple, routine tasks involving simple work-related decisions. He is capable of occasional interaction with supervisors, coworkers and the public. The claimant's time off task can be accommodated by normal breaks.

Tr. 24. Because of these limitations, the ALJ concluded that Plaintiff could not perform his past relevant work. Tr. 35. But at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as "Assembler-Small Products I" and "Electronic Assembler." Tr. 36. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 37.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

**DISCUSSION**

Plaintiff contends the ALJ erred by (1) failing to provide clear and convincing reasons for rejecting his subjective symptom testimony, (2) rejecting the medical opinions of four doctors, and (3) rejecting the opinion of one "other" medical source. Pl. Opening Br. 5, ECF 13. For the following reasons, the Court reverses the ALJ's decision and remands this case for further proceedings.

I.      Subjective Symptom Testimony

Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons to reject his subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. Carmickle v. Comm'r, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons") (quotation marks and citation omitted); see also Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ engages in a two-step analysis for subjective symptom evaluation: first, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order

to reject the claimant's testimony about the severity of the symptoms.") (quotation marks and citations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (the reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony."). Factors the ALJ may consider when making such determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in the testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). In addition, conflicts between a claimant's testimony and the objective medical evidence in the record can undermine a claimant's credibility. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

At the time of the hearing, Plaintiff testified that his most recent neck surgery had reduced his pain. Tr. 56. Plaintiff does not drive because of his spinal fusion and self-described "anger problems." Tr. 55. He stated that his hands are very weak and shaky and that he can no longer do activities like cut his own hair. Tr. 56. He testified that he could lift 5-10 pounds. Tr. 56. Plaintiff described being embarrassed and frustrated about his strength. Tr. 60.

Plaintiff attends to his own personal care and does his own laundry twice a month. Tr. 318, 772. He goes to the grocery store once a week. Tr. 318; 772. He reported that he plays some games on the computer and watches TV. Tr. 319. In 2015 he fished at the pond where he lives. Tr. 327. He also goes down to the river with friends and sits. Tr. 772. He goes out to eat and to friends' houses. Tr. 319, 327. He attended his daughter's graduation. Tr. 319.

Plaintiff has a history of creating metal art. Tr. 57, 61. He testified that although he finished one piece for his mother, it took him a long time and he does not do metal work anymore because his "hands aren't coordinated enough." Tr. 57, 61. He draws and looks things up on Pinterest. Tr. 786.

Plaintiff testified that he has "high anxiety." Tr. 54. He stated that he has problems with paranoia and "always thinks the worst in a situation." Tr. 57. He takes medication and is in counseling for his mental health. Tr. 54. Plaintiff testified that he struggles to remember things and follow instructions. Tr. 54. He stated, for example, that at the grocery store he forgets what he's going to get. Tr. 60. He testified that his mother keeps track of his medical appointments and accompanies him to appointments to help him manage the information. Tr. 62–63. He testified that his memory and difficulty following instructions would prevent him from doing a job that required him to do things at a reasonable pace. Tr. 61.

The ALJ provided four reasons for discounting Plaintiff's subjective symptom testimony: (1) improvement with treatment, (2) the objective medical evidence, (3) Plaintiff's activities of daily living, and (4) inconsistencies in Plaintiff's statements. The ALJ gave specific, clear and convincing reasons for discounting Plaintiff's symptom testimony.

A.     Improvement with Treatment and the Objective Medical Evidence

The ALJ found that the overall medical record does not support the degree of severity alleged and that post-operative evaluations showed substantial improvement in symptoms. Tr. 28.

Plaintiff has a long and documented history of neck and back pain and has had three significant back surgeries. Tr. 380, 668, 827. Post-operative follow-up visits from these surgeries suggest that they have been successful in treating Plaintiff's symptoms. Tr. 790. Four months after his May 2015 surgery, Dr. Yeh noted that he was "doing extremely well status post anterior cervical discectomy and fusion at multiple levels." Tr. 790 A month later, Dr. Yeh found that post-surgery, Plaintiff seemed "stable with no escalation in neck pain," although he was "positive for neck pain and stiffness." Tr. 821–822. Two months after his July 2016 procedure, he reported to Dr. Yeh that he had "some neck pain and lower back pain on the right side" but that his neck was better with "less pain." Tr. 870. In February 2017, Dr. Roundy, Plaintiff's neurosurgeon, noted that he had "good solid fusion" of the cervical spine and that he was "doing well without any issues." Tr. 880. In April 2017, at a visit for arm pain, he reported that his neck was "doing a lot better." Tr. 903. And though earlier chart notes, describe longstanding "gait abnormality" more recent chart notes report his gait as "stable" with one 2017 note finding an "unstable/broad based" gait. Tr. 833, 908, 931, 948, 1124.

Plaintiff testified that his hands are weak and uncoordinated. Tr. 56, 57. At a 2015 assessment of his gross/fine motor skills, Plaintiff was able to "grip and hold objects securely to the palm by the last three digits" and was able to "grasp and manipulate both large and small objects with the first three digits." Tr. 776. He could "sort paperclips, unwind, manipulate, and rewind the paperclips appropriately." *Id.* At a 2016 neuropsychological consultation his fine

motor speed and dexterity were reported as "severely impaired for his right hand and moderately to severely impaired for his left hand." Tr. 849.

His most recent exams show 5/5 for strength of his upper and lower extremities. Tr. Tr. 908, 948. At those same visits his neurological screen was reported as normal and at another 2017 visit it was recorded as "grossly nonfocal." *Id.*; Tr. 968.

The ALJ's conclusion about Plaintiff's improvement with treatment is supported by substantial evidence and is a clear and convincing reason to discount his testimony related to his physical symptoms  *See Orteza*, 50 F.3d at 750 ("Factors that the adjudicator may consider when making such credibility determinations include the . . . effectiveness or adverse side effects of any pain medication."); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (claimant's testimony undermined by the fact he responded well to conservative treatment). The record shows significant improvement in Plaintiff's back issues. It also demonstrates improvement in Plaintiff's strength, gait, and other neurological symptoms. As described above, and in his opinion, the ALJ also properly relied on the objective medical evidence as grounds for discounting Plaintiff's testimony related to his physical symptoms. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects. 20 C.F.R. § 404.1529(c)(2).").

B.      Plaintiff's Activities of Daily Living

The ALJ found that Plaintiff's reported activities conflict with his allegation of debilitating physical and mental symptoms. Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti*, 533

F.3d at 1039. There are two grounds for using daily activities to support an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). In order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick,* 157 F.3d at 722. The ALJ cannot mischaracterize statements and documents in the record or take these out of context in order to reach his conclusion on the claimant's credibility. *Id.* at 722–23.

From Plaintiff's disability onset date, he reported various activities that are at odds with his testimony of debilitating physical symptoms and difficulty interacting with others. In 2015, he took his dog for walks, went outside a couple of times a day, and fished at the pond by his house, though slower than he used to. Tr. 316, 318, 327, 786. He grocery shops once a week and does his own laundry twice a month. Tr. 318, 772. As for his ability to interact with others, he reported that he spends time with others most days. Tr. 319. He went out to eat, over to friends' houses, played some games on the computer, and met friends at the river to sit and talk. *Id.*, Tr. 772. Accordingly, the ALJ did not err by discounting Plaintiff's testimony about his physical symptoms and his testimony that he has trouble interacting with others.

The ALJ did err however to the extent he discounted Plaintiff's testimony regarding memory. Plaintiff reported that he uses the computer to play some games and look up things on Pinterest. Tr. 319, 786. He watches TV and does art projects. *Id.* These activities do not undermine his testimony about memory problems. *See Orn,* 495 F.3d at 639 ("undemanding" activities such as reading, watching television, and coloring in coloring books does not detract from credibility as to overall disability). This was harmless error however because the ALJ gave another permissible reason for discounting Plaintiff's testimony about his memory.

The ALJ found that inconsistencies by Plaintiff undermine the weight given to his reported memory problems. Tr. 29. At the hearing, Plaintiff complained that his memory problems worsened after his May 2015 surgery, but, as the ALJ noted, Plaintiff admitted to using methamphetamines during that same time. *Id.* He also reported his drug use inconsistently to medical providers. At a June 2016 neuropsychological consultation, Plaintiff stated that he had not used methamphetamines since 2006 but in 2015 he admitted to using methamphetamines at a doctor's visit assessing his reported memory issues. Tr. 822; 846. "Inconsistent or dishonest statements about drug use can be used to infer a lack of veracity in the claimant's other assertions." *Rusten v. Comm'r of Soc. Sec. Admin.*, 468 F. App'x 717, 719 (9th Cir. 2012). At that same visit, Dr. Yeh noted that Plaintiff's memory loss was "probably multifactorial," and a possible cause was his "use of meth in the past." Tr. 821. Accordingly, this was a permissible reason to discount Plaintiff's testimony about his memory. The Court finds that the ALJ provided clear and convincing reasons to discredit Plaintiff's subjective symptom testimony.

II.    Medical Opinion Evidence

Plaintiff argues the ALJ improperly rejected the opinion of Dr. Andresen, Dr. Mautner, Dr. Powers, Dr. Fung, and Betsy Pownall, a non-acceptable medical source. Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id.*; 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2). More weight is also given to an examining physician than to a nonexamining physician. *Garrison*, 759 F.3d at 1012.

If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating

physician's opinion is given controlling weight. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Orn*, 495 F.3d at 631. If the treating physician's opinion is not contradicted by another doctor, the ALJ may reject it only for "clear and convincing" reasons supported by substantial evidence in the record. *Ghanim*, 763 F.3d at 1160–61.

Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons" which are supported by substantial evidence in the record. *Id.* at 1161; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

A.      Bryan Andresen, MD,

On August 21, 2015, Dr. Andresen saw Plaintiff for a follow-up visit regarding inpatient rehabilitation related to his cervical myelopathy. Tr. 779. He found that Plaintiff had "Motor strength generally" and 4+/5 strength in major muscle groups of both upper extremities and 4/5 strength in lower extremities. Tr. 780. He noted that Plaintiff had applied for social security disability and stated that he suspected he "would have a very difficult time maintaining gainful employment with current neurologic deficits." *Id.*

The ALJ discounted Dr. Andresen's opinion because it: (1) is "not consistent with claimant's neuromuscular examinations and progress notes," (2) conflicts with Dr. Yeh's September 2015 treatment note, and (3) differs from consultative examiner Dr. Williams. Tr. 31. These reasons are supported by substantial evidence.

An ALJ may reject an opinion that is contradictory to the medical record at large. *Tommasetti*, 533 F.3d at 1041. Here, the ALJ described Plaintiff's post-surgery progress notes that show improvements in his neurological deficits and pain over time. *See supra*. This includes an evaluation by treating physician Dr. Yeh. Tr. 789.  Dr. Yeh saw Plaintiff less than three weeks

after Dr. Andresen. *Id.* He found that Plaintiff had 5/5 strength in all upper and lower extremities

was "doing extremely well status post anterior cervical discectomy." Tr. 790. These findings

conflict with Dr. Andresen's opinion and support the ALJ's decision to reject Dr. Andresen's

conclusions.

There is also a conflict between the opinion of Dr. Williams and Dr. Andresen.

The ALJ permissibly relied on these differences because of the type of exam performed by Dr.

Williams compared to Dr. Andresen. *See* Tr. 31 (noting that Dr. Williams opinion was "based on

thorough physical evaluation of claimant during the same month" as Dr. Andresen's visits.); 20

C.F.R. 404.1527(c) (factors for evaluating opinion evidence include the examining relationship,

length and nature of treatment relationship, supportability, and specialization).

B.    Dawn Mautner, MD

Dr. Mautner completed a medical evaluation of Plaintiff on November 28, 2017. Tr.

1148. She stated that Plaintiff's pain and fatigue required him to rest for two hours at least twice

daily and that he would likely miss more than four days of work a month due to his medical

problems. Tr. 1147–1148. Dr. Mautner's opinion conflicts with Dr. Williams's opinion. Thus,

the ALJ may reject her opinion for "specific and legitimate reasons that are supported by

substantial evidence." *Garrison*, 759 F.3d at 1012.

The ALJ gave Dr. Mautner's opinion little weight finding that it was (1) "not consistent

with contemporaneous treatment/exam records, imaging studies, and progress notes and (2)

inconsistent with Plaintiff's reported activities of daily living." Tr. 35.

The ALJ's first reason is supported by substantial evidence. Inconsistency with the

physician's medical records is a specific and legitimate reason to discount a physician's opinion.

*See Tommasetti*, 533 F.3d at 1041 (finding that an "incongruity" between a physician's questionnaire responses and the medical record provided a specific and legitimate reason to reject his opinion); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider."). Here, the ALJ provided a detailed discussion of Plaintiff's medical history and treatment. As discussed above, this history shows improvement in his neck pain, strength in his upper and lower extremities, and a stable gait. The conclusions in Dr. Mautner's medical evaluation are also inconsistent with her earlier treatment notes showing Plaintiff's pain adequately controlled with medication. Tr. 953 (noting that Plaintiff's "pain and spasm mostly adequately managed" with medications); Tr. 968 ("Neuro: grossly nonfocal," "Pain adequately controlled. Symptoms improved with" medication). The record and the inconsistency between Dr. Mautner's responses in the medical evaluation and her treatment notes provide specific and legitimate reasons supported by substantial evidence to reject her opinion.

The second reason provided by the ALJ was not supported by substantial evidence. An ALJ may reject a medical opinion that is inconsistent with the plaintiff's reported activities of daily living. *See Ghanim*, 763 F.3d at 1162 (citing *Morgan*, 169 F.3d at 600–02). Nothing in the description of Plaintiff's activities however contradicts Dr. Mautner's conclusion that Plaintiff requires two hours of rest twice a day. For most of Plaintiff's reported activities, the duration of time he conducts them is not in the record and the ALJ failed to explain which activities undermine her findings. In any event, this was harmless error because the ALJ provided sufficient grounds to reject Dr. Mautner's November 2017 medical evaluation based on the inconsistencies described above.

C.    Peter A. Powers, Ph.D.

Dr. Powers, an examining psychologist, found that Plaintiff's "cognitive functioning appears impaired with his ability to understand and remember instructions, sustain concentration and attention, and persist at work related tasks in serious doubt." Tr. 787. He recommended that a representative payee be appointed if Plaintiff is awarded benefits. *Id.* He noted that Plaintiff suffers from "anxiety and depression" and a relationship history that involves "considerable conflict and legal entanglements." *Id.*

The ALJ assigned Dr. Powers' opinion partial weight finding that his assessment of Plaintiff as having "significant impairment in concentration, persistence and pace, as well as difficulties handling funds is consistent with objective evidence on exam." Tr. 33. He noted that Dr. Powers "did not provide any specific function-by-function assessment of claimant's particular vocation limitations/capacities." *Id.* The ALJ state that Dr. Powers' reported findings were accounted for in the RFC "with limitations to simple, routine tasks involving only simple work-related decisions and no more than occasional interaction with coworkers, supervisors and the public." *Id.*

Plaintiff argues that the ALJ failed to explain how the limitation in the RFC accounts for Dr. Powers' opinion. This was not error. The ALJ is tasked with translating medical opinions into concrete restrictions in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Here, the ALJ reasonably translated Dr. Powers' opinion into a limitation to "simple, routine tasks involving only simple work-related decisions and no more than occasional interaction with coworkers, supervisors and the public." Tr. 33. This was sufficient given the findings identified by Dr. Powers and the lack of specificity in his opinion. The ALJ also permissibly discounted his opinion because it lacked a function-by-function assessment. *See*

*Morgan*, 169 F.3d 595, 601 (9th Cir. 1999) (finding that an ALJ may disregard a medical opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity.").

      D.     Ernest Fung, PsyD

After reporting memory difficulties, Plaintiff's primary care physician referred him to Dr. Fung for a neuropsychological consultation. Tr. 843. In June 2016, Dr. Fung conducted an extensive evaluation of Plaintiff that tested his attention and information processing, memory, verbal skills, visuospatial skills, executive functioning, motor skills, and emotional functioning. Tr. 848–849. From this evaluation, Dr. Fung found that Plaintiff's "neurocognitive baseline as measured by psychometric testing was estimated to fall within the low average range." Tr. 849. He noted "prominent difficulties in memory and information processing" and that Plaintiff's "information processing speed was slow." Tr. 850. He concluded that Plaintiff's profile was "consistent with minor neurocognitive disorder." *Id.*

In September 2016, Dr. Fung completed a mental health residual functional capacity statement. Tr. 862. He found that Plaintiff had several moderate limitations and some marked limitations related to his memory and understanding, sustained concentration and persistence, and adaptation. Tr. 863–865. For example, he found a moderate limitation in Plaintiff's "ability to remember locations and work-like procedures" and marked limitations in his "ability to maintain attention and concentration for extended periods" and "ability to sustain an ordinary routine without special supervision." Tr. 863. By the Report's definitions, a moderate limitation "seriously interferences with the individual's ability to perform the designated activity on a regular and sustained basis, i.e., 8 hours a day, 5 days a week, or an equivalent, work schedule " and a marked limitation precludes it. Tr. 862.

The ALJ assigned Dr. Fung's September 2016 statement "little weight" finding that the opinion "essentially consists of rating checkboxes without explanation" and lacked evidence to support the degree of limitations opined. Tr. 33–34. He also noted that the statement conflicted with Dr. Fung's June 2016 neuropsychological consultation findings. Tr. 34.

An ALJ may permissibly discount a checkbox report where the basis for the conclusions are not adequately explained. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). A checkbox report however may be entitled to greater weight if it is supported by the record and based on "significant experience" with the plaintiff. *Garrison*, 759 F.3d at 1013. Although, Dr. Fung's checkbox statement lacks an explanation, it was conducted less than three months after he completed an in-depth neuropsychological consultation. Tr. 843–851. The consultation included several objective tests and generated a lengthy report. *Id.* Accordingly, the September 2016 checkbox statement did not exist in isolation and was buttressed by Dr. Fung's earlier evaluation of Plaintiff and the resulting impressions. A lack of evidence was not a clear and convincing reason to give Dr. Fung's opinion little weight.

The ALJ also found an inconsistency between the two reports. Tr. 34. Specifically, he found the checkbox limitations inconsistent with Dr. Fung's June 2016 impressions that Plaintiff's "baseline neurocognitive function" fell "within the low average range'" and the assessment of a "probable minor unspecified neurocognitive disorder." Tr. 34. The ALJ does not explain how these impressions conflict with the findings on the checkbox form and it is not obvious from the record that a conflict exists. The ALJ appears to make unsubstantiated assumptions as to how Dr. Fung's impressions recorded in the June 2016 report would translate into the limitations identified on the checkbox form. As a result, this was not a clear and convincing reason to reject Dr. Fung's opinion.

E.      Betsy Pownall, LPC

Ms. Pownall, a licensed therapist, submitted a letter on behalf of Plaintiff. Tr. 825.

Plaintiff agrees that Ms. Pownall is a non-acceptable medical source. Pl. Brief at 17. Information

from medical sources other than "acceptable medical sources" may provide insight into "the

severity of the impairment(s) and how it affects the individual's ability to function." SSR 06–

03p. The ALJ must consider several factors when evaluating the opinion of such sources,

including: (1) length of relationship and frequency of contact; (2) consistency of opinion with

other evidence; (3) quality of source's explanation for opinion; (4) any specialty or expertise

related to impairment; and (5) any other factors tending to support or refute the opinion. *See* SSR

06–03p; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Under Ninth Circuit law, evidence from

"other sources" is considered under the same standard as that used to evaluate lay witness

testimony, meaning the ALJ may reject it for reasons germane to the witness. *Molina*, 674 F.3d

at 1111 (because physician's assistant was not an acceptable medical source, ALJ could discount

physician's assistant's opinion for germane reasons). "Further, the reasons germane to each

witness must be specific." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

In her letter, Ms. Pownall wrote that Plaintiff presented as "emotionally vulnerable,

anxious, and having significant problems with both short and long term memory." Tr. 825. She

stated further that Plaintiff reported "having 'overwhelming anxiety,'" "has problems with

emotional regulation," and difficulty coping with memory loss and loss of physical dexterity. *Id.*

She wrote that he has "inadequate housing, is unable to work, and has difficulty taking care of

personal health." *Id.*

The ALJ discounted Ms. Pownall's opinion because it (1) summarized Plaintiff's

symptom reports and treatment history while providing "little evidence of clinical objective

findings to support the opinion of disability," (2) was not consistent with status exam findings, and (3) she is not an acceptable medical source. Tr. 34.

The ALJ provided a germane reason supported by substantial evidence to discount Ms. Pownall's opinion. An ALJ may consider the quality of a source's explanation when discounting a non-acceptable source. *See* SSR 06–03p; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Her opinion does not identify the basis for the opined limitations and largely restates Plaintiff's subjective reports, most of which the ALJ properly discredited. *See Tommasetti*, 533 F.3d at 1041 (finding reliance on a claimant's discredited subjective complaints as a specific, legitimate reasons for rejecting a physician's opinion). Accordingly, the ALJ permissibly relied on the lack of objective clinical findings underlying Ms. Pownall's conclusions to discount her opinion.

IV.    Remand

Plaintiff asks the Court to credit the above-described testimony as true and remand this case for payment of benefits or for further proceedings. To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Garrison*, 759 F.3d at 1020; *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.* Third, if the Court remands the case and credits the improperly discredited evidence as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.* The "ordinary remand rule" is "the proper course," except in rare circumstances. *Treichler*, 775 F.3d at 1101.

The ALJ failed to articulate legally sufficient reasons for rejecting the medical opinion of Dr. Fung. While proper consideration of the limitations in Dr. Fung's opinion would require a finding of disability, the Court finds that further proceedings, rather than a remand for benefits, would be useful. The record is not "free of conflicts, ambiguities, or gaps." *Leon v. Berryhill,* *880 F.3d 1041, 1047 (9th Cir. 2017).* As explained above, there are outstanding issues to resolve regarding Plaintiff's testimony and credibility. Exercising its discretion, the Court finds it is appropriate to remand this case for further proceedings so that the ALJ may properly consider and evaluate the evidence.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

IT IS SO ORDERED.

DATED:   September 16, 2021   .


MARCO A. HERNÁNDEZ

United States District Judge